UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| United States of America, | Criminal No. 3:11cr1 (JBA) |
| *v.* | |
| Joseph Reyes and Richard Daniels, | March 4, 2013 |

**RULING ON DEFENDANTS' MOTIONS FOR RECONSIDERATION**

On August 29, 2012, Defendants Richard Daniels and Joseph Reyes were convicted by a jury of conspiracy to distribute and to possess with intent to distribute narcotics, in violation of 21 U.S.C. §§ 841(b)(1)(A)(i), 841(b)(1)(A)(iii) and 846 (Count One), and conspiracy to maintain a drug–involved premises within 1000 feet of a public housing facility, in violation of 21 U.S.C. §§ 846 and 869 (Count Two). (*See* Jury Verdict [Doc. # 544].) With respect to the narcotics distribution conspiracy, the jury found that the quantity of drugs involved in the conspiracy that was reasonably foreseeable to each Defendant was one kilogram or more of heroin and 280 grams or more of cocaine base ("crack cocaine"). (*See id.*) Defendant Reyes was also convicted of possession of a firearm by a convicted felon—a Taurus .40 caliber handgun, Model PT140—in violation of 18 U.S.C. §§ 922(g) and 924(a)(2) (Count Three). (*See id.*)

Defendant Daniels moved [Doc. # 553] pursuant to Federal Rule of Criminal Procedure 29 for a judgment of acquittal on both counts, and Defendants Reyes moved [Doc. # 567] pursuant to Federal Rules of Criminal Procedure 29 and 33 for a judgment of acquittal on all counts, or in the alternative, for a new trial. Both Defendants argued, *inter alia*, that there was insufficient evidence as to the quantity of heroin that was the object of the conspiracy and was reasonably foreseeable to them. On February 19, 2013,

the Court denied these motions.  (*See* Ruling on Post–Trial Motions [Doc. # 711].)
Defendants now move [Docs. ## 718, 720] for reconsideration, on the grounds that the
Court's calculation of the quantity of heroin involved in the conspiracy was incorrect or
based on flawed mathematical computation.   For the following reasons, Defendants'
motions are denied.

## I.      Legal Standard

Although the Federal Rules of Criminal Procedure do not expressly provide for
reconsideration, the Local Rules for the District of Connecticut contemplate the use of
motions for reconsideration in criminal cases.  *See* Loc. R. Crim. P. 1(c) (stating that Loc.
R. Civ. P. 7(c), which governs motions for reconsideration, applies in criminal cases); *see
also United States v. Green*, 3:12-CR-193 (VLB) 2013 WL 424621, at *4 (D. Conn. Feb. 1,
2013).  "The major grounds justifying reconsideration are 'an intervening change of
controlling law, the availability of new evidence, or the need to correct a clear error or
prevent manifest injustice,'" *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d
1245, 1255 (2d Cir. 1992) (quoting 18B C. Wright, A. Miller, & E. Cooper, *Federal
Practice and Procedure* § 4478), and reconsideration should be granted only if "the
moving party can point to controlling decisions or data that the court overlooked matters,
in other words, that might reasonably be expected to alter the conclusion reached by the
court," *Shrader v. CSX Transp. Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).  The standard on a
motion for reconsideration is "strict."  *Id.*

## II.     Discussion

Defendants argue that they are entitled to reconsideration because the Court
miscalculated the quantity of heroin involved in the conspiracy.  Specifically, Defendants
claim that the evidence at trial did not support a finding that each $10 bag of heroin

contained 0.05 grams of heroin, and that the Court should have concluded that each $10 bag contained 0.01 grams of heroin, a multiplier which could not have supported a foreseeability finding of 1 kilogram or more of heroin.

In its ruling on Defendants' post–trial motions, the Court acknowledged that there was conflicting evidence presented at trial regarding the amount of heroin contained in a $10 bag. (*See* Ruling on Post–Trial Motions at 10 (noting that Agent Dinnan testified that each bag contained 0.01 grams of heroin and that Agent King testified that each bag contained 0.03 grams of heroin)). However, the Court held that construing the evidence in the light most favorable to the Government, as is appropriate on a motion for judgment of acquittal pursuant to Rule 29, *see United States v. Cote*, 544 F.3d 88, 98 (2d Cir. 2008) ("The Court must view the evidence presented at trial in the light most favorable to the Government, and draw all reasonable inferences in its favor."), there was sufficient evidence for the jury to have concluded that the charged conspiracy involved one kilogram or more of heroin:

> However, the chemical analyses of the narcotics seized from the gang's customers showed that five $10 bags of heroin contained 0.25 grams, or an average of 0.05 grams of heroin per bag. Agent Dinnan also testified that a "brick" of heroin—i.e., 100 $10 bags—contains 5 grams of heroin, or an average of 0.05 grams per bag. Cooperating witnesses testified that the gang sold between five and fifteen "bundles"—i.e., 10 $10 bags—every day. Thus, at the high end, the gang sold 7.5 grams of heroin per day, and would have sold one kilogram within less than five months.

*Id.* (internal citations omitted).

Defendants cite to Agent Dinnan and Agent King's testimony at trial that each $10 bag of heroin contained between 0.01 and 0.03 grams of heroin in support of their argument that the Court should not have calculated the amount of heroin based on an estimate of 0.05 grams per bag. (*See* Trial Tr. ("Tr.") at 162 ("Q: And isn't it true that in

each little bag there is approximately .03 grams of heroin? A: Yes."), 680–81 ("Q:  And it

terms of the quantity—well, do you know what the quantity, approximately, is inside each

of those little baggies?  A:  It's a really, really small amount.  It's like little crumbs.  It's like

point—it varies, but it's around .01 grams. . . . Q: Up until what?  A:  Up until—it could be

.02, .0—it's because of whoever is packaging how much is in it.").)  Defendants emphasize

that by her own admission, Agent Dinnan's math was flawed (*see* Tr. at 681), and that she

gave several conflicting calculations of how much each dose of heroin usually weighs.

Defendants also point out that several of the other chemical analyses of drugs seized from

the co–conspirator's customers showed that each $10 bag contained between 0.01 and

0.02 grams of heroin.  (*See e.g.*, Tr. at 921; Ex. 200; *see also* Ex. 1 to Def. Reyes's Sent.

Mem. [Doc. # 719].)   Defendant Reyes argues that the heroin seized in Exhibit 248,

which showed that each bag contained 0.05 grams of heroin, was actually an aberration,

because the customer in that transaction requested six bags for $50, which is the price of

five bags.  (*See* Ex. 32.)

Some of Agent Dinnan's testimony was admittedly based on math errors, which

were the subject of cross–examination during trial.   (*See* Tr. at 691.)   However,

Defendants do not dispute that the bags of heroin seized in Exhibit 248 contained an

average of 0.05 grams per bag.  Nor do they dispute that several cooperating witnesses

testified that the members of the conspiracy typically sold between five and fifteen

bundles, or between 50 and 150 bags, of heroin per day from 105/107 Johnson Street.

(*See* Tr. at 455, 476, 1040.)  Thus, Defendants do not dispute that there was evidence at

trial from which a jury could have concluded that the conspiracy sold, at most, 7.5 grams

of heroin per day.  At this rate, the jury could have concluded that the conspiracy sold over 2.7 kilograms within one year.[1]

Furthermore, even if the jury had calculated the amount of heroin sold at a lesser per–bag quantity, they still could have concluded that the charged conspiracy involved more than one kilogram of heroin.  Agent King testified that each $10 bag contained 0.03 grams of heroin.  (*See* Tr. at 162.)  Using this multiplier, at a rate of 150 bags per day, the conspiracy would have sold 4.5 grams of heroin per day, which amounts to about 1.6 kilograms of heroin in a year.  Furthermore, assuming that each bag sold by the co–conspirators contained 0.02 grams of heroin, as Defendants admit was supported by chemical analysis and Agent Dinnan's testimony, (*see* Tr. at 680–81; Def. Reyes's Sent. Mem. at 5–6), at a rate of 15 bundles per day, the conspiracy would have sold 3 grams of heroin per day, which amounts to slightly more than 1 kilogram in a year.  Therefore, for a successful motion Defendants must establish that only the multiplier of 0.01 should be used to calculate the amount of heroin involved in the charged conspiracy which would "reasonably be expected to alter the conclusion reached by the court," *Shrader*, 70 F.3d at 257, that the jury had sufficient evidence to support its finding on drug quantity.  Because the jury also heard evidence supporting the use of a multiplier of 0.02, 0.03, or 0.05, and the jury reasonably could have relied on the average of those numbers to account for any variation in quantity between bags, the outcome of the Court's ruling would not be changed as there remained evidence for the jury's consideration of a multiplier of greater than 0.01, which supports their finding of 1 kilogram or more as the reasonably foreseeable object of the conspiracy.

---

[1] The conspiracy was charged for the period from January 2010 to January 2011. (*See* Third Superseding Indict. [Doc. # 349] ¶¶ 1, 4.)

III.    **Conclusion**

For the foregoing reasons, Defendant Reyes's Motion [Doc. # 720] for Reconsideration is DENIED, and Defendant Daniels's Motion [Doc. # 718] for Reconsideration is DENIED.

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton, U.S.D.J.


Dated at New Haven, Connecticut this 4th day of March, 2013.

6