UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOSEPH REYES | Criminal No. 3:11cr1 (JBA)<br><br>May 26, 2021 |

**RULING GRANTING DEFENDANT'S MOTION TO REDUCE SENTENCE**

Defendant Joseph Reyes filed this motion pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) requesting "that his term of imprisonment be reduced so as to permit immediate placement on supervised release conditions or, in the alternative for any other reduction that this court deems appropriate" because his medical conditions place him at risk of severe illness from COVID-19. (Def.'s Mot. [Doc. # 884] at 1.) In its briefing, the Government had opposed Mr. Reyes's release; however, at the virtual hearing that took place on May 5, 2021, the Government stated that it would defer to the Court on whether release was appropriate. (*See* Gov't's Mem. [Doc. # 886] at 1; Tr. [Doc. # 897] at 44-45.) For the reasons set forth below, Mr. Reyes's motion for a sentence reduction is GRANTED and his sentence is reduced to 120 months.

**I.     Background**

On August 29, 2012, a jury convicted Mr. Reyes of (1) conspiracy to distribute and to possess with intent to distribute one kilogram or more of heroin and 280 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(i), 841(b)(1)(B)(iii), and 846; (2) conspiracy to maintain a drug-involved premise within 1,000 feet of a school and a housing facility, in violation of 21 U.S.C. §§ 846 and 860; and (3) possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (Verdict [Doc. # 544] at

1-2.) On February 28, 2013, the Court sentenced Mr. Reyes to 300 months' imprisonment, midway between the United States Sentencing Guideline range low end of 360 months and the mandatory minimum of 240 months. (Sentencing Order [Doc. # 726] at 1.) Mr. Reyes is currently housed at F.C.I. Big Sandy in Inez, Kentucky and has a projected release date of November 13, 2032. FIND AN INMATE, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last accessed May 26, 2021). He has been incarcerated for 124 months for these convictions. (Def.'s Mem. at 12).

Defendant has class 2 obesity, weighing 225 pounds and with a body mass index of 37.4.[1] (*Id* at 5); *see* Centers for Disease Control and Prevention, Defining Adult Overweight & Obesity (last updated April 28, 2021), https://www.cdc.gov/obesity/adult/defining.html. He also "suffers from high blood pressure, hypertension stage one and hypercholesterolemia." (Def.'s Mot. at 1; Medical Records at 1, 8, 32.) His medical records reflect that his hypertension may have reached "stage II" severity based on one reading that places his systolic pressure above 140 mm Hg and another reading that places his diastolic pressure above 90 mm Hg. (Def.'s Mem. at 5; Medical Records at 12, 16; *see also* Mayo Clinic, High Blood Pressure (Hypertension) (last visited May 20, 2021), https://www.mayoclinic.org/diseases-conditions/high-blood-pressure/diagnosis-treatment/drc-20373417.

## II.     Legal Standard

Defendant moves for release pursuant to 18 U.S.C. § 3582(c)(1)(A), which provides that

> The court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by

---

[1] Defendant notes that "BOP records fail to indicate his most-current weight, and despite numerous attempts to obtain this information, the BOP has not provided anything regarding [his] weight beyond October 5, 2018." (Def.'s Mem. at 5.) On October 5, 2018, Mr. Reyes weighed 192 pounds and stood 66 inches tall (although his height measurements have varied between 64 and 66 inches), which would make his BMI 31.0 and place him in class 1 obesity. (Medical Records [Doc. # 885] at 22, 52.) Mr. Reyes reports that he presently weighs 225 pounds. (Def.'s Mem. at 5.)

the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Section 3582(c)(1)(A) was designed to expand, expedite, and improve the process of compassionate release or sentence reduction. *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020). District courts are afforded discretion to consider a wide range of factors in assessing a motion for compassionate release, including a defendant's "age at the time of [the] crime, . . . the injustice of a lengthy sentence," and "the present coronavirus pandemic." *Id.* at 238. "[T]he only statutory limit on what a court may consider to be extraordinary and compelling is that rehabilitation *alone* shall not be considered an extraordinary and compelling reason." *Id.* at 237-238 (emphasis in original) (internal quotations omitted).

### III.   Discussion

There are three questions before the Court: first, whether Defendant has satisfied the administrative exhaustion requirement; second, whether Defendant has demonstrated extraordinary and compelling reasons for a sentence reduction; and third, whether a sentence reduction is consistent with the factors set forth in 18 U.S.C. § 3553(a).

#### a. Administrative Exhaustion

Mr. Reyes submitted a written request for compassionate release to the warden of F.C.I. Big Sandy on October 7, 2020 and was issued a denial on October 9, 2020. (Def.'s Mot. at 1.) The Government agrees that Defendant had satisfied his administrative exhaustion requirements. (Tr. at 12.) The Court agrees.

#### b. Extraordinary and Compelling Circumstances

3

A confluence of factors leads the Court to conclude that extraordinary and compelling circumstances are present. Significantly, the Government no longer opposes Mr. Reyes's release and leaves that determination for the discretion of the Court. (Tr. at 43.)

In addition, Mr. Reyes was subject to a sentencing enhancement that would no longer apply if he were sentenced today.[2] Without that enhancement, his mandatory minimum would have been 120 months.

Finally, Mr. Reyes has documented medical conditions that place him at increased risk of severe illness or death if he contracts COVID-19. *See* Centers for Disease Control and Prevention, *COVID-19: Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated May 13, 2021). Although Mr. Reyes has received both doses of the vaccine that provides very substantial protection against COVID-19, newly available data describe "breakthrough infections" caused by COVID variants in vaccinated populations. *See* Ezgi Hacisuleyman, et. al, *Vaccine Breakthrough Infection with SARS-CoV-2 Variants*, NEW ENGL. J. MED. (2021), https://www.nejm.org/doi/full/10.1056/NEJMoa2105000 (explaining that "immunizations are proving to be less potent against the variant first identified in South

---

[2] Mr. Reyes received a § 851 enhancement based on a prior state drug conviction under Conn. Gen. Stat. 21a-277(a), which increased his mandatory minimum sentence from ten years to twenty years. (*See* Notice Charging Prior Offense Pursuant to 21 U.S.C. § 851 [Doc. # 260] at 1-2); Sentencing Tr. [Doc. # 753] at 34-35.) Courts now must apply a categorical approach in determining whether prior convictions under state law meet the federal definition of a felony drug offense. *United States v. De La Torre*, 940 F.3d 938, 948 (7th Cir. 2019); *see also United States v. Graves*, 925 F.3d 1036, 1039 (9th Cir. 2019) (holding that courts must apply a categorical approach when determining whether a state conviction is a predicate drug trafficking offense). This Court and others have held that, in light of intervening Supreme Court precedent, because Conn. Gen. Stat. 21a-277(a) "is categorically broader than the generic Guidelines' 'controlled substance offense," a defendant's prior conviction under the state statute cannot qualify as a predicate offense. *United States v. Epps*, 322 F. Supp. 3d 299, 307 (D. Conn. 2018); *see also Allen v. Ives*, 950 F.3d 1184, 1187 (9th Cir. 2020). Thus, if sentenced today Mr. Reyes's prior felony drug convictions would not qualify as predicate offenses, and his statutory mandatory minimum would have been reduced from twenty years to ten years.

Africa" and emphasizing "the need to maintain layers of mitigation strategies"); Centers for Disease Control and Prevention, *Vaccine Information for People with Certain Medical Conditions*, https://www.cdc.gov/vaccines/covid-19/health-departments/breakthrough-cases.html (last updated May 14, 2021) (writing that "vaccine breakthrough cases are expected[, that] there will be a small percentage of people who are fully vaccinated who still get sick, are hospitalized, or die from COVID-19"). Although Mr. Reyes's odds of experiencing serious illness are now substantially reduced, they are not non-existent, particularly given the impossibility of consistent social distancing while incarcerated in a congregate setting. *See* Centers for Disease Control and Prevention, *Guidance for Shared or Congregate Housing*, https://www.cdc.gov/coronavirus/2019-ncov/community/shared-congregate-house/guidance-shared-congregate-housing.html (last updated Dec. 31, 2020).

The combination of Mr. Reyes's medical vulnerabilities, his rehabilitation progress, and his sentence pursuant to a now inapplicable enhancement demonstrate extraordinary and compelling circumstances entitling him to eligibility for release. However, even where extraordinary and compelling reasons are present, a defendant is not automatically entitled to release. Rather, the Court must evaluate the factors set forth in 18 U.S.C. § 3553(a) and determine whether a reduction in sentence is consistent with those considerations.

### c. Section 3553(a) Factors

The Section 3553(a) factors this court considers include:

> (1) The nature and circumstances of the offense and the history and characteristics of the defendant
> (2) The need for the sentence imposed –
>     a. To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     b. To afford adequate deterrence to criminal conduct;
>     c. To protect the public from further crimes of the defendant . . . .
> (6) The need to avoid warranted sentence disparities among defendants with similar records who have been found guilty of similar misconduct.

> i. *Nature and Circumstances of the Offense and the History and Characteristics of the Defendant*

Mr. Reyes was indisputably convicted of serious offenses, and these convictions were not his first contact with the criminal justice system. Mr. Reyes has accumulated numerous felony and misdemeanor convictions beginning at age sixteen (*Id.* at 9-19.) He has remained discipline-free for the last two years and has received only minor tickets in the last decade, suggesting that his behavior has improved from his earlier days in prison. (Def.'s Mem. at 10-11.)

Mr. Reyes explains that his changed behavior is a result of his personal transformation and total rehabilitation. At the hearing, he explained that he had previously "blamed a lot of people but [him]self for the situation," but realized that he needed to "accept[] responsibility" and "change to become a better person not just for [him]self but for [his] family and [his] loved ones and [his] daughter." (Tr. at 47.) He described having taken numerous parenting courses while incarcerated in an attempt to "uplift" himself and bond with his child. (*Id.* at 48-49.) He believes that he and his family have felt a difference in their relationships. (*Id.*)

Mr. Reyes also points to the anger management classes he took that have helped him learn to control his temper and "be a better man in society." (*Id.*) Reflecting on the progress he had made over the course of his sentence, Mr. Reyes explained that although he was initially angry about his sentence, he now feels grateful for it because his incarceration allowed him to grow, stating:

> And the time you gave me at sentencing, it – at first it was harsh. But when I sat down[, I] realized I really forced you to give me that time. I'm happy [] for having me go to trial, really. Like I just thank you for giving me that time because it gave me the opportunity to open my eyes and realize and become a better person that I am today, to be the better person . . . that stands in front of you . . . because [if] I would have got lesser time or [won the] trial and went home, no growth, no change would have came at all, I think. So I thank you for that. . . . January 5th [the date of sentencing] was a gift

6

> and a curse to me. The gift was the person you see in front of you, the changed man, the better person that I became, the way I think, the programs I took, everything. I strive to be a better person. I try. I try to be a better person every day.

(Tr. at 46-48.) The Government agreed that Mr. Reyes appeared to have undergone a profound transformation, noting that he was, "a very different person back in 2010, 2011, 2012 . . . than he was today. . . . He is more articulate. He is more self-aware of what he did in the past and where he is now. He is very concerned with his daughter, with his family. . . . [H]e appears to be someone that's learned from his prior conduct and wants to come out and wants to be a contributing member of society." (Tr. 43-44.)

Importantly, Mr. Reyes's changed disciplinary record tracks the personal transformation he describes, showing no incidents in two-and-a-half years. (Inmate Discipline Data [Doc. # 885-1] at 2.) In 2016, he enrolled in a parenting class and family reunification program that met for sixty hours. (Inmate Education Tr. at 1.) After that, he completed over a dozen classes, including a 300-hour vocational program and courses on adolescent development and empathy. (*Id.*) The combination of Mr. Reyes's words and actions and the Government's observation that Defendant has changed for the better weighs in favor of his release.

    ii. *The Need for the Sentence Imposed*

Mr. Reyes was sentenced to 300 months' incarceration, of which he has served over ten years. This sentence, particularly considering the more difficult conditions under which it has been recently served as a result of the COVID-19 pandemic, is without doubt substantial. *See United States v. Lizardi*, 2020 U.S. Dist. LEXIS 1881417 (S.D.N.Y. Oct. 9, 2020) ("A day spent in prison under extreme lockdown and in legitimate fear of contracting a once-in-a-century deadly virus exacts a price on a prisoner beyond that imposed by an ordinary day in prison.") He points out that his co-conspirators are no longer incarcerated for their participation in this drug conspiracy. (Def.'s Mem. at 12-13.) Mr. Daniels, the only one of Mr. Reyes's co-defendants to also go to trial, was resentenced to 120 months as a result of his §

2255 petition, approximately the amount of time Mr. Reyes has currently served. (Am. J. [Doc. # 847].) The current reality that the intervening change of law halved his mandatory minimum sentence and all of his co-defendants have completed their sentences indicate that his 300-month sentence is now likely greater than necessary to achieve the goals of sentencing.

Although Mr. Reyes's criminal history leaves unanswered the concern about whether he will reoffend if released, his behavioral transformation over the last two years as acknowledged by the Government, his sincere remorse and acceptance of responsibility, and the strong support of his family reflected in his release plan persuade the Court that this risk is worth taking.

### IV. Conclusion

After thorough consideration of Section 3553(a) factors the Court concludes that a sentence reduction is appropriate. His sentence is hereby reduced to 120 months, the mandatory minimum sentence he would face if sentenced today. Mr. Reyes should be promptly released to begin his ten years of supervised release. (*See* J. at 1.) In addition to the conditions imposed at sentencing, Mr. Reyes should serve the first six months on home detention with electronic monitoring selected by the U.S. Probation Office. He shall perform 250 hours of community service to be overseen by his probation officer.

IT IS SO ORDERED.

_____/s/_____

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 26th day of May 2021.